**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| CORNELL RESEARCH FOUNDATION, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>CHARTER COMMUNICATIONS, INC., CHARTER COMMUNICATIONS, LLC, CHARTER COMMUNICATIONS OPERATING, LLC, CHARTER COMMUNICATIONS HOLDING COMPANY, LLC, CHARTER COMMUNICATIONS HOLDINGS, LLC, SPECTRUM MANAGEMENT HOLDING COMPANY, LLC, SPECTRUM MOBILE, LLC, SPECTRUM MOBILE EQUIPMENT, LLC, and SPECTRUM GULF COAST, LLC,<br><br>*Defendants.* | Civil Action No. _______<br><br>**JURY TRIAL DEMANDED** |

**PLAINTIFF CORNELL RESEARCH FOUNDATION, INC.'S**
**<u>COMPLAINT FOR PATENT INFRINGEMENT</u>**

Plaintiff Cornell Research Foundation, Inc. ("Plaintiff" or "Cornell") files this Complaint for patent infringement against Defendants Charter Communications, Inc., Charter Communications, LLC, Charter Communications Operating, LLC, Charter Communications Holding Company, LLC, Charter Communications Holdings, LLC, Spectrum Management Holding Company, LLC, Spectrum Mobile, LLC, Spectrum Mobile Equipment, LLC, and Spectrum Gulf Coast, LLC (collectively "Defendants" or "Charter"), and hereby alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 271, *et seq*.

2. Defendants have infringed and continue to infringe at least one claim of Cornell's U.S. Patent Nos. 7,839,775 ("the '775 Patent") and 7,965,733 ("the '733 Patent") (collectively, "the Asserted Patents"), attached hereto as Exhibits 1 and 2.

3. This action involves Cornell's patented wireless communications technology as used in Wi-Fi routers, access points, smartphones, tablets and related products and services that Charter provides.

4. Exemplary products and services accused in this case (collectively, the "Accused Instrumentalities") are identified in the attached exhibits. At a high level, they include: (a) Wi-Fi 5 and later gateways, routers, extenders, pods, hotspots and access points that Charter supplies, and other Wi-Fi 5 and later gateways, routers, and access points used with Spectrum Internet and Wi-Fi service; (b) Wi-Fi 6 and later smartphones, tablets and streaming devices that Charter provides, and other Wi-Fi 6 and later smartphones, tablets, and streaming devices used with Spectrum Mobile services; and (c) the Spectrum services that incorporate, use, provide, configure or manage any of them.

5. Cornell seeks damages adequate to compensate it for Charter's infringement, in no event less than a reasonable royalty.

6. Cornell also seeks enhanced damages for Charter's willful infringement, pre- and post-judgment interest, costs, and reserves the right to seek its attorneys' fees under 35 U.S.C. § 285 as an exceptional case.

## THE PARTIES

7. Plaintiff Cornell Research Foundation, Inc., is a New York not-for-profit corporation, having its principal place of business at 395 Pine Tree Road, Suite 310, Ithaca, New York 14850. Cornell Research Foundation is a wholly owned subsidiary of Cornell University, whose mission is to manage intellectual property invented by Cornell employees under Cornell University's Policy 1.5: Inventions and Related Property Rights, including obtaining patent, trademark, or copyright protection where appropriate and licensing intellectual property for commercial development and use.

8. On information and belief, Defendant Charter Communications, Inc. ("CCI") is a Delaware corporation, having its principal place of business located at 400 Washington Boulevard, Stamford, Connecticut 06902. CCI may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

9. On information and belief, Defendant Charter Communications, LLC is a Delaware limited liability company, having its principal place of business located at 12405 Powerscourt Drive, St. Louis, Missouri 63131. Charter Communications, LLC may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

10. On information and belief, Defendant Charter Communications Operating, LLC is a Delaware limited liability company with its principal place of business located at 12405 Powerscourt Drive, St. Louis, Missouri 63131. Charter Communications Operating, LLC may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

11. On information and belief, Defendant Charter Communications Holding Company, LLC is a Delaware limited liability company with its principal place of business located at 12405 Powerscourt Drive, St. Louis, Missouri 63131. Charter Communications Holding Company, LLC may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

12. On information and belief, Defendant Charter Communications Holdings, LLC is a Delaware limited liability company with its principal place of business located at 12405 Powerscourt Drive, St. Louis, Missouri 63131. Charter Communications Holdings, LLC may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

13. On information and belief, Defendant Spectrum Management Holding Company, LLC (“SMHC”) is a Delaware limited liability company with offices located at 12405 Powerscourt Drive, St. Louis, Missouri 63131. SMHC provides management services for the cable systems owned or operated by CCI’s subsidiaries. SMHC may be served through its registered agent Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808.

14. On information and belief, Defendant Spectrum Mobile, LLC (“Spectrum Mobile”) is a Delaware limited liability company with its principal place of business located at 12405 Powerscourt Drive, St. Louis, Missouri 63131. On information and belief, Spectrum Mobile is an indirect subsidiary of CCI. On information and belief, Spectrum Mobile provides Spectrum Mobile wireless service to Charter’s mobile customers, and it sells device protection plans for the smartphones and tablets, including the accused devices, that those customers use. Spectrum Mobile may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

15. On information and belief, Defendant Spectrum Mobile Equipment, LLC is a Delaware limited liability company with its principal place of business located at 12405 Powerscourt Drive, St. Louis, Missouri 63131. On information and belief, Spectrum Mobile Equipment, LLC is a subsidiary of CCI, and CCI is its manager. Spectrum Mobile Equipment, LLC is the lender under the Spectrum Mobile device payment plans through which customers buy smartphones and tablets, including the accused devices, from Charter. Spectrum Mobile Equipment, LLC may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 E. 7th Street, Suite 620, Austin, Texas 78701.

16. On information and belief, Defendant Spectrum Gulf Coast, LLC ("Spectrum Gulf Coast") is a Delaware limited liability company registered to do business in Texas, with its principal place of business at 12405 Powerscourt Drive, St. Louis, Missouri 63131, and is an indirect, wholly owned subsidiary of CCI. Spectrum Gulf Coast, doing business as Spectrum, holds a State-Issued Certificate of Franchise Authority from the Public Utility Commission of Texas to provide cable service in communities in this District, including Marshall, Longview, Tyler, Texarkana, Beaumont, Port Arthur, Orange, Lufkin, Nacogdoches, Frisco and McKinney. On information and belief, Spectrum Gulf Coast is the Charter entity through which Defendants provide Spectrum Internet and Wi-Fi service to subscribers in this District, own and operate the broadband network that serves them, and own, lease, operate and staff the Spectrum retail stores in this District. Spectrum Gulf Coast may be served through its registered agent in Texas, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701.

17. Defendants operate and/or act as a single enterprise and hold themselves out to the public as one company doing business under the Spectrum brand. In its annual report for 2025, CCI states that it is "a leading broadband connectivity company with services available to 58 million homes and small to large businesses across 41 states through our Spectrum® brand," and that it has "approximately 91,900 active full-time equivalent employees." "Spectrum" is a trade name under which CCI and its subsidiaries do business. Charter advertises its Spectrum stores, service packages and job openings, including those in this District, through nationwide Spectrum websites. On information and belief, CCI and Charter Communications Operating, LLC manage and control their subsidiaries, including Spectrum Gulf Coast, which provides Spectrum service and operates the Spectrum stores in this District, and Charter Communications, LLC, which employs the personnel who work in them; those entities share common officers; CCI negotiates and signs agreements, including leases, on their behalf; and the personnel who work at the Spectrum locations in this District act on behalf of CCI and Charter Communications Operating, LLC.

## JURISDICTION AND VENUE

18. Cornell incorporates by reference and realleges the foregoing paragraphs as if fully set forth herein.

19. This action arises under the patent laws of the United States, Title 35, Section 1 *et seq*. of the United States Code. Accordingly, this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

20. This Court has specific personal jurisdiction over each Defendant consistent with the Texas Long Arm Statute and the Due Process Clause of the Fourteenth Amendment. Each Defendant, directly and through its subsidiaries, affiliates and agents, has purposefully directed its

business at Texas and this District by marketing and providing Spectrum Internet, Wi-Fi, and mobile services to subscribers in this District; delivering, installing, servicing, leasing and selling the Accused Instrumentalities in this District; operating offices, retail stores, and network facilities in this District; and employing people in this District. Each Defendant, directly and through its subsidiaries, affiliates and agents, has committed and continues to commit acts of infringement in this District, including by using, offering to sell, selling, leasing and importing the Accused Instrumentalities and by inducing and contributing to infringement by its customers in this District, and derives substantial revenue from products and services provided to residents of this District and Texas. Cornell's claims arise out of and relate to those activities. Exercising jurisdiction over each Defendant is reasonable and does not offend traditional notions of fair play and substantial justice.

21. Venue is proper in this District under 28 U.S.C. §§ 1391 and 1400(b). On information and belief, Defendants have transacted business in this District and have committed acts of direct and indirect infringement in this District by, among other things, making, using, offering to sell, selling, and/or importing products that infringe the Asserted Patents as set forth herein. Defendants have one or more regular and established places of business in this District.

22. On information and belief, Charter leases or owns, and conducts its business on a continuing basis from, physical locations in this District that display the Spectrum name and logo. Those locations include 1414 Summit Avenue, Plano, Texas 75074, 700 Alma Drive, Plano, Texas 75075, 2100 N. Dallas Parkway, Plano, Texas 75075, and 4255-A Dowlen Road, Beaumont, Texas 77706.

23. On information and belief, Charter operates Spectrum retail stores in this District. At those stores, customers subscribe to Spectrum Internet, Wi-Fi, and mobile service, pick up,

exchange, and return Spectrum routers and pods, and buy the Spectrum Mobile smartphones and tablets accused in this case.

24. On information and belief, Charter maintains cable network facilities in this District, including at least one headend, through which it delivers broadband service to customers whose home and business Wi-Fi networks run on the Accused Instrumentalities. Charter technicians based in this District deliver, install, configure, test, and service the accused gateways, routers, extenders, and pods at customer premises in this District.

25. On information and belief, Charter employs people in this District who sell, install and support the Accused Instrumentalities.

26. On information and belief, because Defendants act as a single enterprise, the places of business and acts of each Defendant in this District are attributable to every Defendant for venue purposes.

27. Joinder of the Defendants is proper under 35 U.S.C. § 299. Cornell's claims against them arise out of the same series of transactions and occurrences, namely the making, use, offer for sale, sale and importation of the same Accused Instrumentalities, and those claims present common questions of fact.

## THE ASSERTED PATENTS

### United States Patent No. 7,839,775

28. On November 23, 2010, the U.S. Patent and Trademark Office duly and legally issued the '775 Patent, entitled "Methods and Systems for Channel Sensing Multiple Access Communications with Multipacket Reception." The '775 Patent issued from U.S. Application No. 11/376,067, filed March 14, 2006, which claims priority to U.S. Provisional Application No. 60/594,143, filed March 15, 2005. The '775 Patent was subsequently reexamined by the U.S.

Patent and Trademark Office, following reexamination request 90/013,914; the USPTO issued an *Ex Parte* Reexamination Certificate (U.S. 7,839,775 C1) on June 28, 2017. The ’775 Patent relates, *inter alia*, to communication using carrier sense multiple access (CSMA) with multipacket reception (MPR).

29. The inventors of the ’775 Patent, Electrical and Computer Engineering Professor Toby Berger, PhD, and Douglas S. Chan, PhD, were Cornell University employees at the time of the invention.

30. Cornell is the owner and assignee of the entire right, title, and interest in the ’775 Patent by assignment from the inventors recorded with the U.S. Patent and Trademark Office, and has the sole right to sue and recover damages for any current, past, or future infringement.

31. The ’775 Patent is valid and enforceable.

**United States Patent No. 7,965,733**

32. On June 21, 2011, the U.S. Patent and Trademark Office duly and legally issued the ’733 Patent, entitled “Systems and Methods to Detect and Avoid Collisions in Channel Sense Multiple Access Communications with Multipacket Reception.” The ’733 Patent issued from U.S. Application No. 11/375,853, filed March 14, 2006, which claims priority to U.S. Provisional Application No. 60/594,143, filed March 15, 2005. The ’733 Patent relates, *inter alia*, to methods and systems to perform collision detection (CD) in a communication network and over multipacket reception (MPR)-capable physical layers.

33. The inventors of the ’733 Patent, Electrical and Computer Engineering Professor Toby Berger, PhD, and Douglas S. Chan, PhD, were Cornell University employees at the time of the invention.

34. Cornell is the owner and assignee of the entire right, title, and interest in the ’733 Patent by assignment from the inventors recorded with the U.S. Patent and Trademark Office, and has the sole right to sue and recover damages for any current, past, or future infringement.

35. The ’733 Patent is valid and enforceable.

## COUNT I: INFRINGEMENT OF THE ’775 PATENT

36. Cornell incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. Cornell further alleges the below upon information and belief.

37. Charter has directly infringed and continues to directly infringe the ’775 Patent, either literally or under the doctrine of equivalents, including at least claims 26 and 56, under 35 U.S.C. § 271(a), by making, using, offering to sell, selling, and/or importing into the United States, the Accused Instrumentalities.

38. By way of example only, each accused Wi-Fi 5 or later access point (including the Spectrum Wave 2 Routers and the Spectrum Wi-Fi 6, 6E and 7 Routers, extenders and pods) is a terminal system that infringes claim 56.

39. Likewise, each accused Wi-Fi 6 or later client device, including the accused smartphones, tablets and streaming devices, operating as a client on a Wi-Fi 6 or later network, is a terminal system that infringes claim 26.

40. Exhibits 3 and 4, which are hereby incorporated by reference, show how exemplary Accused Instrumentalities infringe exemplary claims of the ’775 Patent.

41. Charter has actual notice of its infringement of the ’775 Patent by at least the filing of this Complaint, and Charter was or is now aware of the ’775 Patent or has willfully blinded itself as to the existence of the ’775 Patent and Charter’s infringement thereof.

42. Charter has also indirectly infringed the ’775 Patent under 35 U.S.C. § 271(b) and (c), as set out below. Charter has known of the ’775 Patent, and of how the Accused Instrumentalities infringe it, at least since it was served with this Complaint and Exhibits 3 and 4.

43. Since gaining that knowledge, Charter has actively induced infringement of the ’775 Patent under 35 U.S.C. § 271(b), with specific intent to cause infringement or with willful blindness to it.

44. Charter’s customers and end users directly infringe the asserted claims when they put the Accused Instrumentalities into service and use them, for example by operating Wi-Fi 5 or later gateways, routers, extenders, pods and access points supplied by Charter or used with Spectrum Internet and Wi-Fi service; or by using accused Wi-Fi 6 or later client devices, including smartphones, tablets, and streaming devices, on Wi-Fi 6 or later networks, including networks served by Spectrum Internet and Wi-Fi service.

45. Charter supplies the accused gateways, routers, extenders, and pods as part of Spectrum service and instructs customers to set them up and use them, and instructs customers who use their own gateways and routers with Spectrum Internet and Wi-Fi service how to set them up and use them; sells the accused client devices, including smartphones, tablets, and streaming devices; instructs its Spectrum Mobile and Spectrum Internet subscribers, including subscribers who bring their own devices, to connect the accused devices to Wi-Fi networks; publishes user guides, support articles, videos, and advertising that promote the accused multi-user features; and provides installation, technical support, and network management for the Accused Instrumentalities. *See, e.g.*, Spectrum WiFi 6 Router User Guide, https://drupal-cms.spectrum.net/sites/default/files/2024-09/20240729%20WiFi%206%20User%20Guide.pdf; Connecting a Router to Your Computer, https://www.spectrum.net/support/internet/connecting-

your-own-router-to-your-computer; Using Your Own Router, https://www.spectrumbusiness.net/support/internet/using-your-own-router.

46. Charter has also contributed to infringement of the ’775 Patent under 35 U.S.C. § 271(c). Charter offers to sell, sells and imports the accused gateways, routers, extenders, pods, hotspots, access points, smartphones, tablets, streaming devices, and/or other client devices, and the firmware and software updates it provides for its gateways, routers, extenders, pods, access points and/or hotspots, and with them components of the claimed terminal systems, including the devices’ Wi-Fi chipsets, firmware and software.

47. Charter knows these components are especially made or especially adapted for use in infringing the ’775 Patent. The accused multi-user transmission features they implement are a material part of the claimed inventions, and the components are not staple articles or commodities of commerce suitable for substantial non-infringing use.

48. Charter’s infringement after learning of the ’775 Patent and of how its products infringe has been, and continues to be, knowing, deliberate, and willful.

49. Charter’s infringement has damaged Cornell. Cornell is entitled under 35 U.S.C. § 284 to damages adequate to compensate it for the infringement, in no event less than a reasonable royalty, together with interest and costs.

50. Charter holds no license or other authorization to practice the ’775 Patent.

51. Cornell does not make, sell, offer for sale or import any product that practices the ’775 Patent, and Cornell granted no license under the ’775 Patent until 2022. Through the effective date of that license, therefore, no marking obligation under 35 U.S.C. § 287(a) could have applied to Cornell or to any licensee. To the extent 35 U.S.C. § 287(a) applies, Cornell is entitled to damages for Charter’s infringement during the period permitted by 35 U.S.C. § 286 that preceded

that license, and for Charter's infringement after Charter received actual notice of the '775 Patent and of its infringement, including at least as of the service of this Complaint and Exhibits 3 and 4.

52. Charter's acts of direct and indirect infringement have caused and continue to cause damage to Cornell. Cornell is entitled to damages in accordance with 35 U.S.C. §§ 271, 281, and 284 sustained because of Charter's wrongful acts in an amount to be proven at trial.

## COUNT II: INFRINGEMENT OF THE '733 PATENT

53. Cornell incorporates by reference and re-alleges the foregoing paragraphs as if fully set forth herein. Cornell further alleges the below upon information and belief.

54. Charter has directly infringed, and continues to directly infringe, the '733 Patent, under 35 U.S.C. § 271(a), literally or under the doctrine of equivalents, by making, using, offering to sell and selling within the United States, and importing into the United States, the Wi-Fi 6 and later Accused Instrumentalities without authority. The infringed claims include at least claims 1, 16 and 29, as shown in Exhibit 5.

55. Charter itself performs the methods of the asserted method claims, including for example when it tests and certifies the accused client devices and operates them on Spectrum networks. Charter's direct infringement also includes conduct of others that Charter directs or controls.

56. By way of example only, each accused Wi-Fi 6 or later client device, including the accused smartphones, tablets and streaming devices, performs the method of claim 1 when it exchanges data with a Wi-Fi 6 or later access point, including the accused Spectrum gateways, routers, extenders and pods, and is a receiver system that infringes claim 29 when it receives multi-user downlink transmissions from such an access point. Each accused Wi-Fi 6 or later access point is a transmitter system that infringes claim 16.

57. Exhibit 5, which is incorporated by reference, shows how exemplary Accused Instrumentalities infringe exemplary claims of the ’733 Patent.

58. Charter has actual notice of its infringement of the ’733 Patent by at least the filing of this Complaint, and Charter was or is now aware of the ’733 Patent or has willfully blinded itself as to the existence of the ’733 Patent and Charter’s infringement thereof.

59. Charter has also indirectly infringed the ’733 Patent under 35 U.S.C. § 271(b) and (c), as set out below. Charter has known of the ’733 Patent, and of how the Accused Instrumentalities infringe it, at least since it was served with this Complaint and Exhibit 5.

60. Since gaining that knowledge, Charter has actively induced infringement of the ’733 Patent under 35 U.S.C. § 271(b), with specific intent to cause infringement or with willful blindness to it.

61. Charter’s customers and end users directly infringe the asserted claims when they use accused Wi-Fi 6 or later client devices, including smartphones, tablets and streaming devices, provided by Charter or used with Spectrum Mobile service, on Wi-Fi 6 or later networks; and when they operate Wi-Fi 6 or later gateways, routers, extenders, pods and access points supplied by Charter or used with Spectrum Internet and Wi-Fi service.

62. Charter induces that infringement through the conduct described in paragraph 45, including by selling accused Wi-Fi 6 and later client devices, including smartphones, tablets, and streaming devices; by supplying Wi-Fi 6 and later access points, gateways, routers, extenders, and pods; instructing customers who use their own Wi-Fi 6 and later gateways and routers with Spectrum Internet and Wi-Fi service how to set them up and use them; and by instructing and encouraging its Spectrum Mobile and Spectrum Internet subscribers, including those who bring their own devices, to use the accused devices on Wi-Fi 6 and later networks.

63. Charter has also contributed to infringement of the ’733 Patent under 35 U.S.C. § 271(c). Charter offers to sell, sells and imports the accused gateways, routers, extenders, pods, hotspots, access points, smartphones, tablets, streaming devices, and/or other client devices, and the firmware and software updates it provides for its gateways, routers, extenders, pods, access points and/or hotspots, which are material or apparatus for use in practicing the claimed method, and with them components of the claimed transmitter and receiver systems, including the devices’ Wi-Fi chipsets, firmware and software.

64. Charter knows these components and apparatus are especially made or especially adapted for use in infringing the ’733 Patent. The accused multi-user transmission and reception features they implement are a material part of the claimed inventions, and the components and apparatus are not staple articles or commodities of commerce suitable for substantial non-infringing use.

65. Charter’s infringement after learning of the ’733 Patent and of how its products infringe has been knowing, deliberate, and willful.

66. Charter’s infringement has damaged Cornell. Cornell is entitled under 35 U.S.C. § 284 to damages adequate to compensate it for the infringement, in no event less than a reasonable royalty, together with interest and costs. Cornell seeks damages for all infringement occurring within the period permitted by 35 U.S.C. § 286 and continuing through the expiration of the ’733 Patent.

67. Charter holds no license or other authorization to practice the ’733 Patent.

68. Cornell does not make, sell, offer for sale or import any product that practices the ’733 Patent, and Cornell granted no license under the ’733 Patent until 2022. Through the effective date of that license, therefore, no marking obligation under 35 U.S.C. § 287(a) could have applied

to Cornell or to any licensee. To the extent 35 U.S.C. § 287(a) applies, Cornell is entitled to damages for Charter's infringement during the period permitted by 35 U.S.C. § 286 that preceded that license, and for Charter's infringement after Charter received actual notice of the '733 Patent and of its infringement, including at least as of the service of this Complaint and Exhibit 5.

69. Charter's direct and indirect infringement has caused and continues to cause damage to Cornell. Under 35 U.S.C. §§ 271, 281, and 284, Cornell is entitled to recover the damages it has sustained from Charter's wrongful acts, in an amount to be proven at trial.

## PRAYER FOR RELIEF

Wherefore, Cornell prays for the following relief:

A. A judgment in favor of Cornell that Charter has infringed one or more claims of the Asserted Patents;

B. An award of damages to which Cornell is entitled under 35 U.S.C. § 284 for Charter's past infringement;

C. A judgment that Charter's infringement is willful and an award of enhanced damages under 35 U.S.C. § 284;

D. An award of pre-judgment interest and post-judgment interest on the damages awarded, including pre-judgment interest (pursuant to 35 U.S.C. § 284) from the date of each act of infringement of the Asserted Patents by Charter to the day a damages judgment is entered, and an award of post-judgment interest (pursuant to 28 U.S.C. § 1961) continuing until such judgment is paid, at the maximum rate allowed by law;

E. A judgment and order finding that this is an exceptional case and requiring Charter to pay the costs of this action, including awarding Cornell its reasonable attorneys' fees, pursuant to 35 U.S.C. § 285;

F. An order requiring an accounting for damages not presented at trial; and

G. Any and all other relief that the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, Cornell demands a trial by jury on all claims and issues so triable.

November 6, 2026

Respectfully submitted,

*/s/ Robert F. Kramer (by permission Andrea L. Fair)*

Robert F. Kramer (Admitted E.D. Texas)
rkramer@kramerllp.com
**KRAMER LLP**
1133 Broadway, Suite 1510
New York, NY 10010
Telephone: (212) 755-6475

Nicole Glauser
Texas Bar No. 24050694
nglauser@kramerllp.com
Rachael Chan (Admitted E.D. Texas)
rchan@kramerllp.com
**KRAMER LLP**
500 W 2nd Street, Suite 1900
Austin, TX 78701
Telephone: (737) 415-9284

Robert C. Mattson (Admitted E.D. Texas)
rmattson@kramerllp.com
Courtney Kasuboski (Admitted E.D. Texas)
ckasuboski@kramerllp.com
**KRAMER LLP**
2121 Eisenhower Avenue, Suite 304
Alexandria, VA 22314
Telephone: (202) 589-8187

Safraz Ishmael (Admitted E.D. Texas)
sishmael@kramerllp.com
**KRAMER LLP**
560 Harrison Avenue, Suite 214
Boston, MA 02118
Telephone: (617) 693-0493

Zachariah A. Higgins (Admitted E.D. Texas)
zhiggins@kramerllp.com
Robert McArthur (Admitted E.D. Texas)
rmcarthur@kramerllp.com
Curt Holbreich (Admitted E.D. Texas)
cholbreich@kramerllp.com
Robert Y. Xie (Admitted E.D. Texas)
rxie@kramerllp.com
**KRAMER LLP**
303 Twin Dolphin Drive, Suite 600
Redwood City, CA 94065
Telephone: (650) 681-8544

Andrea L. Fair
Texas Bar No. 24078488
andrea@millerfairhenry.com
**MILLER FAIR HENRY PLLC**
1507 Bill Owens Pkwy
Longview, Texas 75604
Telephone: (903) 757-6400
Facsimile: (903) 757-2323

*Attorneys for Plaintiff*
*Cornell Research Foundation, Inc.*